DAWKINS, J.
Defendant hound itself to deliver to the plaintiff 20,000 bushels of No. 3 white corn at the price of $2 per bushel, delivery to be made October 10, 1917. Admittedly the contract was breached, and defendant was not in a position to deliver more than 5,000 bushels, which was never accepted by plaintiff. This suit is to recover 15 cents per bushel on the whole quantity of 20,000 bushels, as the profit which plaintiff alleges it could have made if defendant had fulfilled its contract.
There was judgment below for the full amount claimed, $3,000, and defendant appeals.
Opinion.
Defendant urged, as its excuse for not delivering the corn, that it was unable to obtain transportation facilities for bringing it to New Orleans, on account of this country’s being engaged, at that time, in the World War and all railway equipment being used for war purposes. Defendant also excepted that the petition was too vague to permit it to answer, in that the names of the persons to whom plaintiff claimed to have sold had not been disclosed, which exception was referred to the merits. However, no objection was urged to the introduction of the evidence, and such proof as was administered has to that extent amended the pleadings. Neither in brief nor argument does defendant seem to seriously urge the other defenses pleaded, i. e., that delivery was to be made for a particular purpose, and that it was legally excused from performing on account of uncontrollable events. The defense now urged appears to be that plaintiff has not proven the damages which it claims, as will be seen from the first of the assignments of error in the brief (there being only two, and the latter dealing with the exception of vagueness, which we find was waived by the failure to object to the evidence), to wit:
“1. The judge of the district court erred in holding that plaintiff was entitled to damages for deprivation of prospective profits, in the absence of absolute, clear, positive, and certain proof that plaintiff had been deprived of such prospective profits or could have made such prospective profits, particularly in the face of direct evidence to the contrary.”
Strange to say, an offer of compromise of $1,000 was made by plaintiff and accepted by the defendant the next day after the corn was to have been delivered, and the latter sent its check for that amount, but which was returned by plaintiff, and neither party has pleaded that settlement in this case.
[1] The plaintiff was bound to minimize its damage, if this were possible, by purchasing in the open market corn to fill its alleged orders; but the record discloses that no effort was made to do this, and but for the *1035 averment in the defendant’s answer that its failure to deliver was due to the fact that no corn was available at■ this point, and the further fact that the parties seem to have taken it for granted that it could not be had, plaintiff would be precluded from recovering for the reason that the alleged loss would not be shown to have been caused solely through the fault of the defendant.
[2] The evidence in this record, to say the least, is very unsatisfactory to the point of establishing the loss. Quite an unusual circumstance is that the plaintiff’s agent, who made the contract, testifies that on the day for the delivery there were in his office, awaiting the action of the .defendant, some three or more competitive bidders, most of them of the same nationality as himself, offering $2.10, $2.15, $2.16, and $2.20 per bushel for the corn, and he accepted the offer of $2.15 per bushel. Two days later, October 12th (the date of delivery being the 10th), plaintiff, through this same agent, wrote the defendant, returning the check of $1,000, above referred to, as follows:
“Upon advice of our attorney, Mr. Lemle & Lemle, we are returning your check No. 18419 on the Whitney Central National Bank for $1,000.00.
“We are giving a eheolc to Mr. M. E. Hart for $1,700.00 [underscoring apparently by the writer of the letter) and instead of making a profit on the corn, the transaction now stands us $2,500.00 loss, that is, our commission on the sale together with the $1,700.00 which we were compelled to pay Mr. Hart.
“With this we notify you that unless we receive a check for $2,500.00, to reimburse us for our loss, within three days, it will be necessary for us to enter into legal procedure to collect same.
“The writer hopes it will be not necessary to take such unpleasant actions, and hopes that the transaction can be straightened out in an amicable way.”
Yet plaintiff’s claim for damages appears to be pitched upon an agreement to sell to some one represented by the Interstate. Bank & Trust Company, not for commissions or loss paid to any one as damages for its own failure to deliver, but for profits which it could have made had it been able to deliver the corn. The inconsistency of the two claims thus becomes glaring, both as to the character of the loss and the manner in which it was occasioned. It is positively shown that Garcia, the writer of the letter, never sent Hart any check or paid him any sum whatever. He also swore on the stand that he sold the corn to Hart, and that the written evidence of “the proposition to Mr. Hart is on file at the office,” and, while he promised to produce it, this was never done, nor was Hart ever called as a witness to corroborate his testimony. It is true that Garcia was no longer connected with the plaintiff company when this suit was filed, but there is no explanation offered for the failure to produce the alleged writing, or the failure to call Hart as a witness; on the contrary, as above pointed out, plaintiff, in the brief and argument, appears to rely upon an entirely different transaction. We must conclude, therefore, that this evidence would not have been favorable to plaintiff. •
Again, Hart was not a broker or grain dealer, but the manager of an electrical establishment, and there is absolutely no showing of his ability to pay for this large quantity of corn, involving $43,000. We know that men of small means sometimes speculate in the future market; but we are led to believe from Garcia’s evidence that this was a spot transaction, and that the corn was to have been actually delivered.
We think the record fails to establish with sufficient certainty to support a recovery, either an actual sale to Hart, or that the corn could have been sold to .him, and that he could have paid for it, if defendant had made delivery to plaintiff.
Plaintiff also called as a witness in the case one Caros McLean, who testified that he had bought the same 20,000 bushels of corn as the representative of the Interstate *1037 Bank for another Mexican client; and we quote some of his testimony, as follows:
“Q. Then, as I understand it, Mr. Garcia, of the Mexican Importing & Exporting Company, sold you 20,000 bushels of 'corn at $2.15 per bushel?
“A. Yes, sir.
“Q. Is that correct?
“A. Yes, sir; positively.
“Q. Was that transaction reduced to writing?
“A. It whs not subject to writing. I have made transactions of larger amounts than that, and they were not subject to writing. The offer was made and the offer accepted, and that closes it entirely. It is not absolutely necessary if you buy corn or rice or anything to have the writing. He accepted the contract, the transaction was closed, and then explained why he didn’t deliver the corn.”
It is not pretended that plaintiff had or had contracted for any other corn than the 20,000 bushels bought of defendant, and the succeeding testimony of McLean shows that it was this identical coin, for he says that the excuse given by Garcia for failure to deliver to him was “that Leonhardt & Go. wouldn’t deliver it to him.”
Reputable brokers sworn on behalf of defendant say that it is the uniform custom to confirm such transactions in writing, yet this was not done, at least there was no proof of it as to the Hart transaction and positive showing, as illustrated by the above quoted testimony, that the alleged sale to McLean was not confirmed in writing.
We understand, of course, that the theory of plaintiff’s case, as presented by its counsel, is that, if the corn had been delivered, it could have been sold and the profit claimed made, and not that it had actually sold to any one. But the evidence which it introduced is of a different nature; it discloses that before the suit plaintiff was claiming loss as for commissions and reimbursement for damages which it had had to pay to Hart; and the agent, Garcia, tends to back this up with his evidence on the stand. Yet plaintiff’s only other witness (to prove its loss), McLean, contradicts Garcia by swearing that the sale of the same corn had positively been closed with him.
[3] In cases of this kind claims for damages for the breach of a contract, the plaintiff cannot recover upon a probable showing, but must make his claim certain. Here the two witnesses whose testimony is relied upon, not only do not corroborate each other, but there is, as above shown, an actual conflict. Hence there is neither the testimony of two witnesses, nor of one supported by corroborating circumstances sufficient to support the claim which exceeds $500, as required by article 2277 of the Revised Civil Oode. Hannay v. N. O. Cotton Ex., 112 La. 1001, 36 South. 831.
For the reasons assigned, the judgment appealed from is set aside, and plaintiff’s demands rejected at its cost.
Rehearing refused by Division A, composed of Chief Justice PROVO STY and Justices OVERTON and LECHE.